UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WALSH CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00324-JRS-MJD |
| | ) | |
| ADL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS TO ENFORCE SETTLEMENT AGREEMENT**

This matter is before the Court on Plaintiff's Motion to Enforce Settlement Agreement and Attorneys' Fees, [Dkt. 120], and Defendant's Counter-Motion to Enforce Settlement Agreement, [Dkt. 121]. For the reasons set forth below, the Court **DENIES** both motions.

## I. Background

Plaintiff Walsh Construction Co. ("Walsh") initiated this lawsuit in the Vigo County Superior Court on May 20, 2020, and Defendant ADL Systems, Inc., ("ADL") removed the case to this Court on June 25, 2020. [Dkt. 1.] In its Complaint, Walsh explains that it entered into an agreement with the Indiana Department of Transportation ("INDOT") to serve as the general contractor for construction of a bridge in Vigo County, Indiana ("the Project"). [Dkt. 1-1 at 23.] On January 8, 2008, Walsh entered into a purchase order agreement with ADL to furnish a mechanically stabilized earth ("MSE") wall system for the Project. *Id.* Walsh asserts claims for breach of contract, failure to indemnify, and negligence against ADL, arising from work performed in furtherance of the Project.

On January 17, 2022, the parties engaged in mediation with Pete Schroeder ("the Mediator"). [Dkt. 115.] The matter did not settle at that time, and the mediation was recessed. Later that day, the Mediator summarized the mediation in an email reading as follows:

> This email confirms where this mediation has recessed. Counsel for ADL will use his best efforts to bring this matter to final resolution pursuant to the terms set forth below:
>
> 1. $700,000 final settlement number. This settlement will be for any and all claims, known and unknown, by Walsh, that it may have against ADL related to the project at issue in this litigation;
> 2. Walsh will indemnify ADL for any claim by INDOT solely related to this project (will use project number). Indemnity will not include:
>    a. A lawsuit by INDOT related to multiple MSE systems that includes this project;
>    b. A lawsuit by INDOT that includes a claim for fraudulent conduct against ADL (or any party to whom ADL owes indemnity), even if it includes both fraudulent and non-fraudulent allegations;
>    c. A lawsuit by INDOT related to the process by which the MSE system at-issue in this case was approved for use, or certified for use, in INDOT projects.
> 3. This demand by Walsh will remain open until 5:00 p.m. (EST) January 21, 2022.
>
> Steve [counsel for ADL], please get back to all of us as soon as you have an answer from your client's carrier.

[Dkt. 120-1.] In other words, Walsh's settlement demand was two-fold, requiring (1) a monetary component in the amount of $700,000; and (2) three exceptions to Walsh's indemnification of ADL. *See* [Dkt. 120 at 1].

Steven Krueger, counsel for ADL, soon responded to the Mediator's email, stating that "ADL accepts the proposed language of the settlement demand. I will let you know if we can raise the money on time." [Dkt. 120-2.] Walsh asserts that Mr. Krueger's email constituted ADL's acceptance of the three indemnification exceptions and thus, at that point, "the only remaining issue was the monetary component." [Dkt. 120 at 1.] Then, on January 21, 2022, Mr. Krueger relayed that "ADL Systems, and its insurer, MIC, agree to accept and meet the

mediation demand of Walsh Construction of $700,000.00." [Dkt. 120-4.] Counsel for Walsh, Brandon Kroft, responded that "[s]ettlement is confirmed." *Id.* Thereafter, the parties exchanged proposed versions of a release and settlement agreement.

The Mediator filed his report on January 31, 2022, in which he stated that "this case was mediated on January 17, 2022, and a settlement was reached." [Dkt. 115.] The Court then denied all pending motions as moot, vacated deadlines, and directed the parties to file a motion to dismiss. [Dkt. 116.] However, in the process of agreeing upon a release and settlement agreement, negotiations appear to have broken down, resulting in the filing of the instant motions.

## II.   Discussion

The crux of the parties' dispute is whether the three indemnity exclusions enumerated in the Mediator's email summary, *see* [Dkt. 120-1 paragraphs 2(a), 2(b), and 2(c)] ("the Indemnity Exclusions"), must be part of the settlement agreement. Walsh argues that ADL's January 17, 2022, acceptance of "the proposed language of the settlement demand," *see* [Dkt. 120-2], binds ADL to the Indemnity Exclusions listed therein, and that ADL has "refused to adopt the various indemnification provisions to which it agreed." [Dkt. 120 at 4.] Walsh therefore asks the Court to enforce that language as the settlement agreement. [Dkt. 120.] Conversely, ADL asserts that the Indemnity Exclusions were not a mandatory part of the agreement, and that including such in the agreement will effectively nullify Walsh's promise to indemnify and hold ADL harmless. [Dkt. 122 at 2.] ADL provides a proposed settlement agreement, *see* [Dkt. 122-1], and asks the Court to enforce it. [Dkt. 121.] The Court must therefore determine whether the parties entered into an enforceable settlement agreement.

Whether an enforceable contract exists "is a question of law." *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) (citing *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006)). Because settlement agreements are simply contracts between the parties to the litigation, "the formation, construction, and enforceability" of such are governed by local contract law. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996) (citing *Laserage Tech. Corp. v. Laserage Lab., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)); *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). A contract has four basic requirements: "offer, acceptance, consideration, and 'a meeting of the minds of the contracting parties.'" *Sands*, 945 N.E.2d at 180 (quoting *Batchelor*, 853 N.E.2d at 165).

Dispensing with ADL's Counter-Motion to Enforce is a swift task. There is no evidence whatsoever that Walsh accepted ADL's proposed agreement, or that the parties discussed or intended to enter such. ADL's motion is thus meritless in that there is no existing settlement agreement to enforce, and the Court will not create a contract on the parties' behalf. *See Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994) ("The parties to a contract have the right to define their mutual rights and obligations, and a court may not make a new contract for the parties or supply missing terms under the guise of construing a contract.") (citation omitted). ADL's Counter-Motion to Enforce Settlement, [Dkt. 122], is therefore **DENIED**.

With regard to Walsh's Motion to Enforce, there is more to say. While the parties reasonably debate whether ADL's email response was an acceptance of the Indemnity Exclusions, that debate illuminates one critical fact: simply put, no "meeting of the minds" has occurred here with regard to the parties' purported settlement agreement. A settlement agreement is enforceable only "if there was a meeting of the minds or mutual assent to all material terms." *Beverly*, 817 F.3d at 333 (citation omitted). Importantly, "[t]he failure to demonstrate agreement

4

on essential terms of a purported contract negates mutual assent and hence there is no contract."
*Ochoa*, 641 N.E.2d at 1044 (citation omitted). Here, the issue of indemnification is a material component of settling this case—one that the parties clearly did not agree upon. Without mutual assent as to what indemnification entails in this matter, no enforceable settlement agreement exists. Accordingly, Walsh's Motion to Enforce Settlement Agreement and Attorneys' Fees, [Dkt. 120], is also **DENIED**.

### III.   Conclusion

For the reasons set forth above, Plaintiff's Motion to Enforce Settlement Agreement and Attorneys' Fees, [Dkt. 120], and Defendant's Counter-Motion to Enforce Settlement Agreement, [Dkt. 121], are both **DENIED**.

Cross-motions for summary judgment and a related motion to strike were pending when the parties reported they had reached a settlement in this matter.   **Within fourteen days of the date of this Order**, each party shall file a motion to reinstate its motion(s), which shall include a list of each filing, identified by docket number, that relates to each motion, including any response and reply.

Discovery in this matter had closed prior to the parties' notification that this matter had settled.  [*See* Dkts. 114 & 115.]  Accordingly, the Court will reset this matter for trial following the resolution of any reinstated motions.

SO ORDERED.

Dated:  9 JUN 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.